May it please the court, my name is Daniel Arkoff and I am a certified law student here for the plaintiff appellant, Mr. Mitchell Fields. I would like to reserve two minutes for rebuttal. This court must reverse the district court for four main reasons. Mr. Fields exhausted the available administrative remedies and stated an Eighth Amendment claim and there are disputed material fact issues with respect to the First Amendment and qualified immunity. Beginning with exhaustion, the defendants have failed to prove their affirmative defense burden that Mr. Fields failed to exhaust the administrative remedies. Indeed, Mr. Fields falls under an exception to exhaustion under this court's Sappy-Kimbrough decision because he had filed grievances that if pursued through all administrative appeals levels would have sufficed to exhaust his claims and because prison officials screened his grievances for reasons inconsistent with or unsupported by the regulation. And as I understand it, you allege that the grievance were improperly screened for three grounds? Yes, Your Honor. One was kite? Yes. The other was rejected for failing to offer a remedy and the other was Burson improperly stated the time frame? Yes, Your Honor. All right, let's try to take the last one on the failure to provide the time frame. I, didn't Fields receive the denial of his first grievance on timeliness ground on February 8th? He received this, yes, on February 8th, Your Honor. Did he ever appeal that? No, Your Honor, and he didn't have. Isn't that, isn't that then a failure to exhaust? No, Your Honor. The reason is that Mr. Fields had resubmitted his grievance. Originally he had received on January 23rd a denial on the merits of this grievance. He submitted a first level appeal of 54667 on January 28th within the five-day time frame. On February 5th, he received a denial indicating he had purportedly failed to attach relevant documents. The grievance procedures provide for tolling. They allow a prisoner to resubmit a grievance within five working days. Now, typically, the grievance system runs on calendar days. This provided Mr. Fields the opportunity to resubmit within five working days, but within two days, his grievance... Well, you're back on what happened with these other appeals. I'm just talking about he got the denial of his first level grievance on February 8th. He did not do one thing after that. Yes, Your Honors, but... Which seems to me to suggest he failed to exhaust. No, Your Honor. He could have appealed the February 8th denial, could he not? No, because he was effectively told that the grievance system was unavailable to him as a matter of procedure. When? There was no room for cure. When? Because he was told that the... When? On February 8th. He was told that the time frame had been exhausted. And essentially what that is indicating is that his claim is abandoned. This Court stated in Morella v. Terhune in 2009 that a prisoner exhausts all available administrative remedies when prison officials erroneously deny this grievance as untimely. And it based this reasoning on what the Court said in Brown v. Vailoff, that when a prisoner is reliably informed by a prison administrator that no remedies are available, he is exhausted. That was the exact reasoning this Court used in Morella, and this Court should likewise apply this reasoning to Mr. Fields' case in finding that he exhausted on the First... on the Eighth Amendment. But he exhausted on the First Amendment as well. He filed four grievances on this issue, and each of these placed the prison officials on notice of the nature of the wrong, and so they satisfy Stapp's first prong, and each of these were also denied erroneously. Now, the three... first three grievances were essentially denied as kites. And the last grievance, Grievance No. 94429, we have to separate the reason as to why it was actually rejected from the reason as to why it could have been rejected, alternative reasons put forth in the motion to dismiss and adopted by the District Court. The only reason that was actually provided to Mr. Fields for denial was that he had purportedly failed to attach relevant documents. Mr. Fields claimed, and he indicated in his appeal, I do not have the documents. I never received a response. And Defendant Burson indicated in her own declaration that, well, it must have been misplaced. When prison officials fail to timely respond to a prisoner's grievance, he has exhausted all available administrative remedies, according to the 5th, 6th, 7th, 8th, and 10th circuits. And it goes in line with... I'm a little worried about your second ground. It seems to me that your grievance rejected for failing to offer a remedy is pretty good as it relates to the retaliation claim. It's a little harder for me to see how it relates to the excessive force claim, because it's certainly not going to be a remedy to punish Cizan, I call him Cizan, I don't know what his name is, or compensate your client, or preventing the incident. So while it might be something you could say regard to the retaliation, I'm having a tough time as to the excess force. On the merits with respect to the 8th Amendment? Well, Mr. Fields stated an 8th Amendment claim, that's the only inquiry now, it's a motion to dismiss. Mr. Fields indicated that as he was exiting the Chow Hall at the Southern Desert Correctional Center, Defendant Cizan had placed him aside and began groping him and repeatedly jabbing his pants and underwear into his rectum. And then when Defendant Cizan asked Officer Schultz nearby to do something about this, Defendant Cizan then began again repeatedly jabbing Mr. Fields' pants and underwear with increasing force into his rectum. And these allegations are all stated in the complaint. This Court should interpret all those allegations as true. He was fully clothed at the time? He was fully clothed. And there's nothing wrong with the pat-downs, with conducting the search itself? No, this is the man. It is with the manner. This was a random search, but Defendant Cizan had no suspicion that Mr. Fields had something. He had no emergency at the time. He was just exiting the Chow Hall. But this was, Mr. Fields indicated, a trainee officer. And as the district court indicated, he was conducting this search in the presence of about ten other correctional officers. Now, several inferences, reasonable inferences, could be made that he either does not know the rules for conducting a pat-down search, which the 8th Amendment does not provide an exception to trainee officers, or perhaps he believed he could get away with something. These are all reasonable inferences. He could have perhaps been showing off to his superiors. And he was repeatedly, quite needlessly, jabbing Mr. Fields' pants and underwear into his rectum. And for these reasons, Mr. Fields stated an 8th Amendment claim. But there is also a disputed issue of material fact with regard to First Amendment retaliation. Because there was adverse action taken against Mr. Fields in the form of administrative segregation, in the form of denial of his medical diet for the entire period of administrative segregation, taken because of his exercise of his protected conduct. Mr. Fields was administratively segregated within two days of having filed a grievance, which is recognized as a First Amendment right. Retaliation against prisoners for filing grievances is clearly established to be a constitutional violation. But isn't there a penological interest in putting him in ADSEC to protect him from the person that he's claiming used excessive force against him? Well, no, Your Honors. Although there may be, the defendants claim that the Prison Rape Elimination Act requires administrative segregation of prisoners who claim sexual abuse. However, the Prison Rape Elimination Act was enacted in 2003, called for the creation of a statutory commission, which would then ask the Attorney General to publish national standards for the detection and prevention of prison rape. Now, this commission wasn't created until 2009, until two years after this incident. And the Attorney General didn't publish these standards until 2012. And when he did so, he had something different to say about administrative segregation. You've almost used your time, but would you just say again, what, tell us again what the issue of material fact is with respect to the retaliation? The issue of material fact is that the segregation served no reasonable penological interest, and the defendants left out the word reasonable in this citation. In their opposition to the appellant's- But what's the dispute? Is there some dispute as to what happened? The dispute is that, well, the appellant's claim that Mr. Fields was kept in administrative segregation for absolutely no purpose. Is there a case that says that one cannot keep one in administrative segregation after a non-retaliatory detention and after the investigation is concluded? I'm not certain if there's an exact case on that. Well, I couldn't find one, so I was trying to get you to help me. And if there isn't one, then how do I get away from qualified immunity? Well, because here, with regard to qualified immunity, I mean, here is a situation where if this happened, one says it was all to protect him, one said it wasn't, and when we get down to the end, what we're really talking about is, even if it wasn't, is there a case that says that one cannot keep one in administrative segregation after the detention and after the investigation was concluded? That's the bottom line, and I couldn't find the case. So at that point, I find myself in a situation saying, well, maybe I ought to say this for the first time now, but I don't know why one shouldn't have qualified immunity until then. The reason is that whether or not law is clearly established can be determined based on And it's common sense that you don't administratively segregate a prisoner after filing grievances and place the same prison official who he grieved sexual assault against as a guard to watch him in administrative segregation. Well, but that's a different question. The question we're talking about is to whether they could keep him in after. I mean, we want to go back to the other question. I've got a timeline as to when Fields identified C Zen as really the person. And that wasn't until December 15th, over a month after he was assaulted. Then he didn't inform prison officials that C Zen had handcuffed him and escorted him alone in Ad Seg until April 14th. The grievance was filed after Fields had been transferred to the High Desert State Prison. Therefore, there seems to be a genuine issue of material fact that he was kept in Ad Seg for too long for filing. There is a genuine issue of material fact. And so this court should dismiss, should remand this case for a jury or a trial court judge to determine what these facts actually are. Well, but then when you move further and you apply that to the immunity question, then I have a problem. Well, Your Honor, he was also denied his medical diet. He has hepatitis C virus. He filed various inmate request forms asking for this medical diet, and it was refused to him. That was another component of the adverse action taken against him. And importantly, for qualified immunity purposes, we do not need cases with facts exactly on point. As a matter of common sense- Well, I wanted a case even close and couldn't find it. Therefore, giving the defendants adequate opportunity to say, hey, I didn't know and I ought to be let out on qualified immunity. I would respectfully disagree because I would argue that it is a matter of common sense that the prisoner after filing grievances would not be kept there with the same prison official against whom he grieved. Yeah, let me, you're doing a good job and we've used more of your time. But was this guy Season or whatever, he was a guard in Ad Seg while your client was in Ad Seg? Yes, Your Honor. And the prison officials knew that? He informed them by way of an inmate request form, yes. In April. In December, he informed them through an inmate request form. And I believe this is an excerpts of record 301, Your Honor. Okay, so there's no issue, fact as to those facts? I don't believe the defendants dispute that he informed them. Okay.  Thank you, Your Honors. Thank you. Good morning, Your Honors, may it please the court. My name is Lawrence Van Dyke and I'm representing the defendant appellees in this case. Just to jump real quick to answer the question, it was at the very end there. Yeah. I do believe, I think that as Judge Smith pointed out, I do believe that the very first time you see in the record where the defendants were told by Mr. Fields that Ceason was in administrative segregation was in April when he was at the next institution. This ER 301, I don't see anywhere, it was just side two, I don't see anywhere on here where he even mentioned Ceason's name. Now he does, I think earlier than that, identify that Ceason as the guard. When he initially brought this up, he didn't even know the guard's name. And I think what Fields' counsel may be referring to is that earlier in the process, he does point out to that Ceason was the guard. That was in December, right? Right, Your Honor, but it's important to recognize that there's actually two affidavits in the record. The only facts on this in the record, an affidavit from Williams, an affidavit from the Burson, the two defendants with regard to the retaliation claim. And they both say they were not aware that Ceason was in administrative segregation with, and they explain, and it's actually explained in Burson's affidavit why that happens, because you can't- Even though they were had him in, your theory is they had him in ad seg to protect him from- Yes, absolutely, Your Honor, that is the facts as laid out in the affidavit. Your Honor, I'd like to address three things this morning, with court's permission. That is, first of all, hopefully very quickly I can address how under Nevada's rules and therefore under the PLRA, Fields clearly failed to exhaust his administrative remedies. Under the rules. And then the next thing I'd like to address is what I think is the meat here, and that really is what I think their arguments rely on, and that there is some exception that allows Fields out of his failure to exhaust. And then lastly, if I have time, address the issue of summary judgment, Your Honor. So with regards to the Nevada rules, the Nevada rules here are like most of these, the rules in most of these inmate litigation grievance processes, there's three levels. There's 25 days per level, the informal grievance, the appeal, the next level, the second level appeal. And it's important to recognize, especially with regard to the retaliation claim, there's a five day period after those 25 days runs. And if, this is critically important, the rules themselves say, if that 25 days runs at any level, then it's the inmate's job to, proceed to the next level if no response is received within the applicable time frame. In other words, the appeal is effectively denied if there's no response. The rules lay out that eventuality. And in fact, there's a 75 day clock for all three levels, and consistent with what the rules require, once that clock starts, even the Nevada Department of Corrections, NDOC, cannot stop that clock unless the inmate agrees. So let's say you've got 25 days, and you're running up against your 25 days to get back to the inmate, but you're doing an investigation, you want more time. If they want more time, it's going to be constructively denied, unless they go to the inmate and get the inmate to give them more time. So that's really important, I think, fact to realize here. It's very easy to see that under the rules, they weren't, that under the Nevada rules, they were not exhausted because as Judge Smith, I think, pointed out. If you look on pages four and five of a plaintiff's own chart in their reply brief. So pages four and five of the reply brief, they have these charts. And the first chart is the excessive force claims. And you will see, there is nowhere mentioned on this first chart, a second level appeal. Fields never filed a second level appeal at all, as clearly required under Nevada rules. And therefore, under the rules themselves, ignoring for a second the exceptions, he didn't exhaust. Similarly, with regard to the retaliation claim, there is a second level appeal, but it was filed at least 14, 15 days too late. And so he did not file within the dead time frame. And so under the rules, he failed to exhaust. So the question, Your Honor, is these exceptions. And I think Judge Smith pointed out three different categories of exception. But I think you can really collapse it to two categories that the fields needs, in this case, in order to have an exception. And that is what I would call the mistake exception, the categorical mistake exception, which Fields is pressing for. He's trying to get Sapp and Nunez extended to have a categorical mistake. In other words, if prison officials made some mistake in triaging my grievances, and if you've read the record here, there's a lot of grievances. A lot of them were counsels bragging about how he filed four grievances. Of course, three of those would have to be duplicative, and therefore, not allowed under the rules on the retaliation claim. But so a lot of grievances, if any mistake is made, then he escapes from the PLRA's requirement and from the Nevada rules requirement. That would be the first one. The second one is a, what I would call, this court cannot, this court or the district court cannot rely on any reason that wasn't given to Fields in response to his grievances. And I think that's the failure to provide the timeline that you mentioned at your third. So I guess, I guess as to the retaliation claim, it's of some worry to me. This is my timeline. An informal grievance was sent, a response was received. At the time the response was received, he was transferred already someplace else. Immediately filed a first level grievance, but it wasn't given, wasn't ever sent, because the clerk failed to deliver it. And so then, on May 30, he files a second level grievance. At the time, he'd never received his notice of the first grievance, and it was rejected because he didn't attach the response. I don't know how he could have attached the response when there was never a response sent. And I don't know why, how he could get it because he never got a response. So then it seems to me he had, based on 740.02, if no response is received, he could go forward. So I'm then trying to figure out how he could have been late in timely filing a second grievance in that situation. And that's why I wanted to point out to your honors that under the Nevada rules, 25 days after he had filed his first level grievance, his first level grievance on his retaliation claim was effectively denied when he received no response. That gave him five days to submit, he knows this, this is the rules. This is the same rules that all of the inmates have explained to them when they come in. In fact, under the rules, they have to have it explained to them. So he needed to file within five days after that. He didn't do that. He waited. Very quickly, I'm thinking back about the Albino case and some of the discussion that occurred in that case. Is there anything in the record that indicates that in fact he was told that if he got no response within 25 days, he was supposed to file a second level? First of all, yes, your honor, the administrative rules themselves are in the record. And the administrative rules- But is there anything showing that in fact he did get those, he was aware of them? Well, your honor, what the administrative rules require is that every inmate be going through an orientation process and have these presented to them. And also, every inmate has a case worker that works with the inmate that helps them. And we know from the record that he had a case worker that was. But ultimately, your honor, I guess the response would be, they have the rules, the rules are in the library. The rules also require a copy of the rules to be available to the inmates. He had these rules at both institutions. He has a duty to know the rules under the PLRA. There's also a rule, 740.01, 1.65, says time frames in 740.02 don't apply if the inmate has been transferred. And he had been transferred. Right, your honor. Well, that was, of course, between his informal grievance and his first level. So his first level grievance was filed at the new institution. And then after that was then 25 days passed when he had not received an answer. Because mistakes will- So the fact is, when the transfer happens, is that which determines whether the rules apply? Because you're trying to limit that only to the time when he foiled the informal grievance and then he was transferred. And I was saying to myself, having filed this immediate first level grievance, if you will, the fact that he was transferred seems to again say that the rules may not apply because he was transferred. Well, not at all, your honor. I think that the rules can be suspended. I mean, it's not like if you get transferred, somehow you don't have to exhaust your administrative remedies. But the rules can be suspended during a transfer period. But that's not an issue in this case because he got transferred and then filed a second level appeal, actually timely, within when he- We're talking about which grievance? The retaliation, your honor, the second one. We're talking about retaliation. So I do want to address with a little bit of time, this idea of this categorical mistake rule. The problem with that is they're way over reading Sapp and Nunez. If any mistake lets you out of having an administrative remedy, it will encourage, or any mistake lets you out of exhausting your remedies, it will encourage to do what exactly happened here, and that is file duplicative unsigned grievances and hope you can trip up prison officials. Let me understand again what it was that he should have done after he was transferred. So I'll actually address for both claims. On the first one, what he should have done, your honor, if he didn't agree with the basis on the failure to, on the excessive force. He should have just, he should have filed, nowhere in the record is there anything about not being misled about filing an excessive force. He should have filed an appeal. On the second one, what he should have done is after his transfer, he did. I mean, after his transfer, he did file a first level appeal. That first level appeal was apparently misplaced, and we're not sure from the record why it was misplaced. We'll never know, because what we do know is that it had the denial of the agreements on top. And we don't know if Fields made a mistake and put it on top, and so therefore, but in any event, there was a mistake and it was not returned to him. But the rules provide for that. So since it was never returned to him, it was constructively denied at 25 days, he had five days after that. But he should have known after he was transferred that he hadn't received a response, and that that was a constructive denial, and that therefore he had to appeal, is that the? Because he had filed the first level after he was transferred. I mean, it's not like he, I want to make sure the court realized, it's not like he filed the first level at the first institution, first level appeal, transferred. And then is thinking, well, maybe this is taking too much time because of the lost time. He actually filed that first level after he was transferred. 25 days goes by, he should have filed his second level of appeal after that, your honor, so. Well, it wasn't, it was really denied because, as I understood it, he didn't. It didn't. He didn't say all the things he needed to do, say. What? But he could not have said all the things he wanted to say. Right, so, so I guess, I guess that's, that's that second thing where can this court rely on a basis that wasn't given to him? And, and it's true that it, at the second level denial, they said it was denied because you didn't attach something that he says he couldn't attach. But it, but, but I think this court can rely on the fact that it was filed late and to say that, well, this court can't rely on it because it can't rely on the fact that it was filed late to find that he didn't exhaust his claims. It's to tie this court's hand and say that if the, if the administration doesn't tell him again, in every instance, something that he's already been told, then that can't be a basis for denial. And secondly, he's not prejudiced by the, by the administration not telling him because if you file something late, you've blown the deadline, or if you fail to file an appeal in a time run, you've blown the deadline. If this court relies on that, even though the institution didn't tell him, if the institution had told him, what good would it do as far as, it's not like he could go back in time and, and fix that mistake, your honors, so. I don't think, I, I think there needs to be at least a prejudice component to the issue of this wasn't told to the, this wasn't told below, so it can't be told to the court. Do you have any other questions? Nope. Thank you. Thank you, your honor. Colleague. All right. Thank you very much for your argument. I don't know if we have, you have any time left, but I. I'm a little bit exhausted, myself. Well, you're who you are, you're a, you're a young man, I'll give you a minute. With respect to. I think I've got Judge Schroeder over here tugging me on the, tugging me on the robe, saying give him a minute, give him a minute, come on. With respect to notifying the prison officials, excerpts of record 305, December 21st, 2007. Direct quote from Mr. Fields. I need to check with AWP Burson about a kite I wrote her about a week ago, telling her that my stay back here makes no sense because the very guard that I'm here being protected from works back here. And with respect to Mr. Fields having to move to the next level, that's not the case. ER 375, AR 740.02136, inmates may proceed to the next level if no response is received with the applicable time frames. This is a permissive provision. It's not a mandatory one. The drafters clearly knew the difference. The regulation preceding uses the word shall, the regulation after uses the word will. This only provides them an opportunity to proceed to the next level. And thus, this court should side with its sister circuits in determining that when prison officials unduly delay in responding to a prisoner's grievance, he is exhausted. And for these reasons and the reasons stated, this court should reverse on all grounds. Thank you. Thank you for the participation in our pro bono program. I was going to say that, sir. We very much appreciate you coming and participating with us in the pro bono program. And I would say certified law student, dang good one as well. Thank you very much.
judges: Benitez, Schroeder, Smith